# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

KELCY WILBORN                                                  PETITIONER

v.                                                                                                   No. 3:06CV26-M-A

STATE OF MISSISSIPPI, ET AL.                                    RESPONDENTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Kelcy Wilborn for a writ of *habeas corpus* under 28 U.S.C. § 2254. The state has answered the petition, and the petitioner has replied. The petitioner and the state have each submitted additional briefs. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* shall be denied.

## Facts and Procedural Posture

The petitioner was convicted in the Circuit Court of Lafayette County, Mississippi for the sale of cocaine. The petitioner sold cocaine to two confidential informants. One informant wore a "wire," which transmitted the sounds of the controlled buy to police officers nearby, and the other informant wore a recording device, which recorded the sounds of the controlled buy for later review. The primary evidence introduced against the petitioner at trial was the testimony of the confidential informants, the testimony of the police officers who listened in on the controlled buy, and recordings and transcripts of the controlled buy. The trial court sentenced the petitioner to thirty years in the custody of the Mississippi Department of Corrections. S.C.R., Vol. 1, pg. 30. The petitioner is currently in the custody of the Mississippi Department of Corrections and housed at the Marshall County Correctional Facility. The petitioner appealed his conviction and

sentence to the Mississippi Court of Appeals, citing as error (as stated by the petitioner through counsel):

> 1. Whether the trial court erred by overruling Wilburn's timely motion for Judgment of Acquittal Notwithstanding the Verdict (J.N.O.V.), or alternatively, for a new trial ("post trial-motion") when:
>
>> A. The prosecution failed to properly identify and authenticate a recorded voice thus making the evidence of such recording so unreliable that a reasonable juror could not have returned a guilty verdict based on the recorded voice.
>>
>> B. The prosecution failed to establish the chain of custody for the tape recorded drug transaction.
>
> 2. Whether the trial court erred by imposing an enhanced sentence based upon Wilburn's status as an habitual offender without conducting a hearing as required by Uniform Circuit and County Court Rule 11.03.

The state court of appeals considered these claims on the merits and affirmed Wilborn's conviction while remanding the case for a new sentencing hearing. *Wilborn v. State*, 856 So. 2d 686 (Miss. App. 2003) (Cause No. 2002-KA-01117-COA). On remand, the state conceded that Wilborn should be sentenced as a maximum term offender rather than a lifetime offender and he was sentenced to serve a term of thirty years in the custody of the Mississippi Department of Corrections.

The petitioner filed a motion for post-conviction collateral relief ("PCR") in the Mississippi Supreme Court, citing as error two claims of ineffective assistance of counsel (as stated by the petitioner):

> A. Trial counsel failed to object to prosecution witnesses repeated reference to evidence of other crimes and wrong acts depriving petitioner of his constitutional rights to effective assistance of counsel and a fair trial, and;

> B. Trial counsel failed to demur to and challenge the constitutionally defective habitual offender portion of Petitioner's indictment during trial's sentencing proceeding and on remand back to trial court for new sentencing hearing deprived him of his constitutional rights to effective assistance of counsel and due process of law.

The Mississippi Supreme Court considered these claims on the merits and denied Wilborn's petition.

In the instant petition, Wilborn raises the following issues (set forth verbatim as stated by the petitioner):

> **Ground One:** The trial court errors by overruling the timely motion for Judgment Acquittal Notwithstanding the Verdict (J.N.O.V.) or alternatively for a new trial.
>
> **Ground Two:** Improper procedure to sentence as an habitual offender.
>
> **Ground Three:** Petitioner was deprived of his constitutional protected right to effective assistance of counsel.[1]

## Grounds One and Two

The claim raised in Ground One of the instant petition (the trial court's failure to grant the petitioner's motion for judgment notwithstanding the verdict) has never been properly presented to the state's highest court and, as such, is barred from federal *habeas corpus* review. Likewise, the petitioner's claims in Ground Two are similarly procedurally barred because he failed to appeal the sentence he received after the case was remanded. The petitioner has not presented these claims to the state's highest court; as such, they are procedurally barred from federal review under *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995), and must be dismissed with prejudice.

---

[1] The petitioner raises in this ground the same claims he raised in his state court application for post-conviction relief.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728 (1999) (citing *Coleman v. Thompson,* 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728 (1999).

A state prisoner must present his claims to a state supreme court in a petition for discretionary review when that review is part of the State's ordinary appellate review procedure. *O'Sullivan*, 119 S.Ct. at 1730. The petitioner did not give the state one full opportunity to resolve any constitutional issues because he failed to complete one round of the state's established appellate review process. The petitioner cannot now exhaust Grounds One and Two because the time for filing such an application in state court has long passed. M.R.A.P. Rule 40 and M.R.A.P. 17(b). As such, the petitioner's claims in Grounds One and Two of the instant petition are procedurally barred. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995); *O'Sullivan*, 119 S.Ct. at 1734 (citing *Coleman v. Thompson,* 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

The petitioner has not shown cause for his default because no external impediment existed to prevent him from raising these claims state court. *United States v. Flores,* 981 F.2d 231 (5th Cir. 1993). As such, the court cannot hear his claims despite the procedural bar. As the petitioner has not shown cause, the court need not consider whether he suffered prejudice to his legal position. *Martin v. Maxey,* 98 F.3d 844, 849 (5th Cir. 1996); *Saahir v. Collins,* 956 F.2d 115, 118 (5th Cir. 1992). The court's decision to forgo analysis of these claims on the merits will not result in a "fundamental miscarriage of justice" because the petitioner has not shown that "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)). The

petitioner does not argue that he was actually innocent of the crime – and has not attempted to introduce any new, reliable evidence which shows that it was "more likely than not that no reasonable juror would have convicted [Wilborn] in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted). As such, the petitioner's claims for relief in Grounds One and two must be denied.

## Ground Three: Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered the petitioner's claims in Ground Three on the merits and decided those issues against him; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to Ground Three of the petitioner's claim.

Nevertheless, under § 2254(d)(2) Ground Three may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

In Ground Three, the petitioner raises two claims of ineffective assistance of counsel. To obtain *habeas corpus* relief on a claim of ineffective assistance of counsel, a petitioner must

prove both constitutionally deficient performance by counsel – and actual prejudice resulting from it. *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner's failure to establish both prongs of the *Strickland* test warrants rejection of his claim. *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998.

To prove deficient performance, the petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. A court must review counsel's decisions in light of the circumstances at the time, rather than with the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). Indeed, there is a strong presumption that counsel has exercised reasonable professional judgment. *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d 813, 187 (5th Cir. 1986).

To prove prejudice, petitioner must demonstrate that the result of the proceedings would have been different – or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). A petitioner must affirmatively prove prejudice, not merely allege it. *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir.), *cert. denied*, 476 U.S. 1143 (1986).

In his first allegation of ineffective assistance of counsel, the petitioner argues that trial counsel failed to object to "repeated references" by the prosecution's witnesses to the petitioner's other crimes or bad acts. The petitioner argues that these comments were made in violation of the trial court's ruling that any "evidence of crimes, wrongs and other acts" was to be excluded unless the petitioner took the stand and opened the door to such evidence. S.C.R., Vol. 2, pg. 6.

As discussed below, these allegations have no merit. First, any references to prior bad acts reflected on the character of the state's informant witnesses rather than on the petitioner himself. Second, the bad acts discussed were within the context of an ongoing investigation of the petitioner's drug dealing activity. The testimony was used in part to establish the petitioner's identity, the confidential informant's relationship with him, and lack of mistake or accident in dealing with the petitioner. Each of these reasons is permissible under MISS. R. EV. 404(b), and, as discussed below, none of the challenged testimony prejudiced the petitioner.

The petitioner first complains of the following exchanges during the cross-examination of Agent Allan Castle:

> Q: How do you know that was his residence if you didn't do any of the things that you said you didn't do?
>
> A: By subsequent investigation into your client's activities.

S.C.R., Vol. 2, pg. 114, and

> Q: And you don't have any witnesses that can put Mr. Wilborn at this house that you say we should accept on faith he lived in except two snitches?
>
> A: I think my testimony was that from my previous investigation of Kelcy Wilborn I had reason to believe he lived there or stayed there.

S.C.R., Vol. 2, pg. 122. These statements do not refer to any prior bad acts of the petitioner. They show only that the charges against him arose out of a continuing investigation by the Lafayette County Metro Narcotics Task Force. Counsel's decision not to object to the statements was proper. *Clark v. Collins*, 19 F. 3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite.").

The petitioner argues next that the direct examination of Agent Scott Mills relayed information involving the petitioner's prior bad acts to the jury. Again, the testimony implicates the informants, not the petitioner:

> A: In some cases it's just a necessary part of an investigation and in this case it was. There was an active investigation going in this particular case and during my investigation at different time whether it be in the daylight hours or in the night time hours myself and some of my agents were or either some of agents will get out and we will check areas where we are receiving complaints about or areas where we are conducting active investigations. Citizens complaints and information that we get from informants. We will check residences or where it may be a business where we are hearing of active drug trafficking going on. On one of these nights and I believe this was in January 2001 we were checking some of these areas and one of the areas we were checking was the residence where Mr. Wilborn was living.
>
> BY MR. LEVIDIOTIS: Your Honor, very respectfully I would ask for leave to approach the bench with counsel.
>
> (BENCH CONFERENCE NO RECORD).
>
> BY THE COURT: Objection overruled.
>
> A: As I said we were checking the area where Mr. Wilborn's residence was located. This was an act of investigation that was on going at that time. When we checked this area we observed the vehicle exiting the driveway. The vehicle got back on Highway 7 proceeded south. In other words, back into Oxford. We got a reason traffic to stop this vehicle and the vehicle was occupied by Mr. Pagent and Mr. Williams. During this stop we obtained reason to search these individuals and to search their vehicles. Mr. Williams was in possession of an amount of marijuana that was I believe packaged in four or five different packages on his person and I think he had on may be like an army type coat or field type jacket and this marijuana was in his jacket and also I think there was some in his pants pocket. Mr. Pagent also had an amount of marijuana on his person and further our investigation we interviewed these guys, took them into custody and they were charged with felony charges on these marijuana. As a direct result of these interviews with these individuals, we furthered our investigation on Mr. Wilborn and that is what eventually led to why

> we are here today. This purchase of drugs and this is the way that we have to make some of these cases. We have to try to move up the chain so to speak and get the smaller dealer, get the bigger dealer, the bigger dealer and so forth and so on and this is where it led us on this occasion.

S.C.R., Vol. 2, pp. 155-157. The testimony does not relay any information about prior bad acts of the petitioner. Instead, the testimony discusses the ongoing investigation of the petitioner and the development of Pagent and Williams as informants. As such, any objection by counsel would have been inappropriate.

The petitioner argues next that the confidential informants (James Williams and Vernon "Bo" Pagent) improperly testified about the petitioner's prior bad acts:

> Q: You said you had been to this residence which is exhibit 6A maybe once a week between sometime in November or December of 100 and the time the first day of February?
>
> A: Yes, sir.
>
> Q: On the first of February, let's start with did you see out Allen Castle on the first of February?
>
> A: Yes, sir.
>
> Q: Where did you meet Allen Castle?
>
> A: At the narcotics office.
>
> Q: Where is that?
>
> A: By Three Way.
>
> Q: What did you go there to meet him for at that time?
>
> A: To get ready to go out to Kelcy's house.
>
> Q: Okay. You were cooperating with the Metro Narcotics?
>
> A: Yes, sir.

| | | |
|---|---|---|
| Q: | And why were you cooperating with them? | |
| A: | Why. | |
| Q: | Yes, sir? | |
| A: | Because we were busted and they told us, you know to make the deal to go out there and buy drugs from Kelcy. | |
| Q: | When you got arrested, stopped about when was that? | |
| A: | Maybe like the month before February 1st. | |
| Q: | Around New Years? | |
| A: | Yes, beginning in January. | |
| Q: | All right. Where were you coming from when you got stopped? | |
| A: | Kelcy's house. | |
| Q: | All Right. And did the Metro Narcotics people ask you if you could go back in there and buy drugs? | |
| A: | Yes, sir. | |
| Q: | And you said you could? | |
| A: | Um-huh. | |

S.C.R., Vol. 3, pp. 211-212.

The petitioner also objects to another portion of Pagent's testimony in which Pagent testified that he had known the petitioner for approximately two months at the time of the controlled buy, had been to the petitioner's house eight to ten times, and that he had been arrested leaving the petitioner's residence with drugs.[2] S.C.R., Vol. 3, pp.251-253. As above, the

---

[2] The petitioner also cites a portion of Pagent's testimony which appears on S.C.R., Vol. 3, pg. 266. However, that testimony refers only to Pagent's own indictments for drug offenses

statements merely explain how these confidential informants came to be involved in the active investigation of the petitioner and make no direct mention of prior bad acts by the petitioner. As such, counsel had no basis on which to object and was gave the petitioner effective assistance. *Clark v. Collins*, 19F.3d at 966.

Finally, the petitioner argues that the prosecutor made an inappropriate reference to the petitioner's prior wrongs in the following portion of his closing argument:

> In this case or this investigation was going on, y'all heard the evidence. The two informants, Bo Pagent and James Williams were identified as individuals who had been there to Kelcy Wilborn's house. They were seen leaving the house. They were stopped, they were searched, drugs were found. And at that point any furtherance of the investigation that was on going again[st] the defendant Kelcy Wilborn, these witnesses were. These individuals were turned as witnesses.

S.C.R., Vol. 3, pg. 278. Again, these comments merely reference the circumstances under which Williams and Pagent became confidential informants. The prosecutor made no reference to specific prior bad acts by Wilborn. In fact, the only prior bad act mentioned in the testimony is felony drug possession *by the informants*, Williams and Pagent. As such, any objection by counsel would have been meritless, and counsel's decision not to object was reasonable. *Clark v. Collins*, 19F.3d at 966.

In his next claim, the petitioner argues that trial counsel was ineffective for failing to challenge the validity of his indictment, as the habitual offender portion came after the words "against the peace and dignity of the State of Mississippi." Although the petitioner is correct that the habitual offender portion of each charge of the indictment appears beneath these words, these words are repeated on the last page of the indictment – and indeed are the final words of the

---

and makes no mention of prior bad acts by the petitioner.

document appearing directly above the signature line. S.C.R., Vol. 1, pp. 1- 4. An objection based upon this claim would have been meritless. Therefore, counsel's failure to raise this issue was proper. *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir.1995); *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir.1990), *see also See Clark v. Collins*, 19 F. 3d at 966 ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite."). For these reasons, the petitioner's claims that counsel was ineffective are without merit.

In sum, all of the petitioner's grounds for relief must be dismissed. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 20th day of June, 2007.

        **/s/ Michael P. Mills**
        **CHIEF JUDGE**
        **UNITED STATES DISTRICT COURT**
        **NORTHERN DISTRICT OF MISSISSIPPI**